IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON WEST,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     CIVIL ACTION NO. 23-CV-3694 |
| ANTHONY LETIZIO, *et al.*<br>    Defendants. | :<br>:<br>: |

**MEMORANDUM**

**YOUNGE, J.**                                                                                                              **MAY 2, 2024**

Jason West, an inmate confined at SCI Phoenix, filed this action seeking money damages for alleged violations of his civil rights pursuant to 42 U.S.C. § 1983. West clams that Defendants delayed proper medical treatment of his serious kidney disorder for a non-medical reason. The Court previously granted West's Motion to Proceed *In Forma Pauperis* and directed service of West's individual capacity claims against Defendants SCI Phoenix Medical Director Anthony Letizio and Physician Assistant Joe Walsh. (ECF No. 8.) Presently before the Court is the Motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 13) by Defendants Letizio and Walsh. West has filed a Response to the Motion. (ECF No. 17). Defendants filed a Reply.[1] (ECF No. 18.) For the following reasons, the Motion is granted in part and denied in part.

---

[1] West also filed a "Request to Deny Defendants' Second Request Motion to Dismiss" (ECF No. 24), which the Defendants move to quash as an unauthorized sur-reply. (*See* ECF No. 25.) Because the Court determines that West's additional pleading is superfluous to the resolution of the Rule 12(b)(6) Motion, the motion to quash will be denied as moot.

I.      **FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[2]

West alleges in his Complaint that on January 5, 2023, he experienced severe abdominal pain that required immediate transport from SCI Phoenix for emergency treatment at Einstein Montgomery Medical Center.  (Compl. at 12.)   West was diagnosed with kidney stones and an infection, and admitted to the hospital.  (*Id.*)  On January 7, 2023, West had surgery for placement of a stent in his kidney.  (*Id.*)  West was discharged on January 9, 2023, with instructions to return within two weeks, approximately January 23, 2023, for follow up treatment.  (*Id.*)  West also received antibiotics to be taken for the infection.  (*Id.*)

West claims that Defendants Letizio and Walsh denied him proper medical treatment from January 9, 2023 through May 15, 2023.  (*Id.* at 12-16.)  Specifically, West alleges that Defendant Letizio reviewed the January 9 discharge paperwork from Einstein Hospital, including the instructions for West's priority two-week follow-up appointment and need for prescription antibiotics, but delayed treatment for an unreasonable length of time and for non-medical reasons.  (*Id.* at 12-13.)  West contends that Defendant Letizio did not timely schedule West's two-week follow-up appointment, provide the prescribed antibiotics, or consult or arrange an appointment with prison urologist, Dr. Laurence H. Belkoff.  (*Id.* at 12-14.)  West claims he was not examined by Dr. Belkoff until March 29, 2023, eighty-one days after his emergency kidney surgery.  (*Id.* at 12-13.)  In the meantime, West experienced additional kidney infections, severe pain, and blood in his urine.  (*Id.*)

---

[2] The facts set forth in this section of the Memorandum are taken from West's Complaint (ECF No. 2).  The Court adopts the pagination assigned by the CM/ECF docketing system to the Complaint and other cited pleadings.

West also claims to have submitted multiple prison sick calls where he was treated by Defendant Walsh. (*Id*. at 13, 15) In response to his complaints of pain and bloody urine, Defendant Walsh merely directed West "drink more water." (*Id*. at 15.) West claims that Defendant Walsh delayed further treatment until April 19, 2023, when Defendant Walsh initiated contact for West to have his first stent removed and to arrange for a second kidney surgery. (*Id*. at 13.) West also contends that at the April 19 visit Defendant Walsh applied pressure to his pelvis while asking "did it hurt," and that this action was not appropriate treatment for West's kidney infection. (*Id*.) On May 15, 2023, West underwent a second kidney surgery to place a stent after experiencing additional infections and blood in his urine. (*Id*.). Defendant Walsh removed the stent on May 19, 2023, five days after surgery. (*Id*.)

Based on the delay in medical treatment, West claims to have suffered intense pain, kidney infections and bloody urine for approximately 130 days, requiring surgical procedures and stent placement/removal. (Compl. at 5.) He seeks monetary damages from Defendants Letizio and Walsh. (*Id*.)

Defendants moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6)[3] arguing that the Complaint lacked sufficient facts to plausibly state a claim for delay of medical care and that West failed to exhaust his administrative remedies. (ECF No. 13.) West

---

[3] Defendants ask the Court to consider, in the alternative, converting their motion to dismiss to a summary judgment motion. The Court rejects Defendants' request. Rule 12(d) requires that if, on a motion under Rules 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). The material that Defendants and West attached to their submissions, apart from materials related to the grievance process, is not relevant to the issues raised by the Defendants and is excluded from the Court's consideration of the Motion. The materials related to exhaustion, however, may be considered at this stage as explained further below.

filed a response addressing Defendants' arguments.  (ECF No. 17.)  Defendants filed a Reply.  (ECF No. 18.)

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the pleadings.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555.)  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("The pleading standard 'is not akin to a 'probability requirement''" rather, "to survive a motion to dismiss, a complaint merely has to state a 'plausible claim for relief.'" (quoting *Iqbal*, 556 U.S. at 678-79)).  In other words, "there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,

4

1426 (3d Cir. 1997). The Court may consider the Complaint, the exhibits attached to the Complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon those documents. *Mayer*, 605 F.3d at 230. Courts must "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Id.*, at 229. Furthermore, "[o]n a motion to dismiss, the district court must read a *pro se* plaintiff's allegations liberally and apply a less stringent standard to the pleadings of a *pro se* plaintiff than to a Complaint drafted by counsel." *Perlberger v. Caplan & Luber, LLP*, 152 F. Supp. 2d 650, 653 (E.D. Pa. 2001) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "Yet even in the case of pro se litigants this leniency does not give a court license to serve as a de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Pricharda v. Street*, No. 22-3061, 2022 WL 4856225, at *2 (E.D. Pa. Oct. 3, 2022) (citing *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014)).

### III. ANALYSIS

Defendants moved to dismiss West's Complaint asserting that West failed to properly exhaust his claims as required by the Prison Litigation Reform Act, and because he has failed to allege claims upon which relief may be granted. (Def. Mot. (ECF No. 13).)

#### A. Exhaustion

"In an effort to curb the number of prisoner filings in the federal courts, Congress enacted the PLRA which[] . . . mandates that prisoners exhaust internal prison grievance procedures before filing suit." *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013); *see* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of

this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("[E]xhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983.") (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "Exhaustion is . . . a non-jurisdictional prerequisite to an inmate bringing suit and, for that reason, . . . it constitutes a threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time." *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (emphasis in original, internal quotations omitted); *Small*, 728 F.3d at 269 ("[E]xhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." (footnote omitted)). Accordingly, in cases governed by the PLRA, courts must address whether the prisoner-plaintiff has substantially complied with the prison's specific grievance procedures and determine whether those procedures were "available" to the inmate. *Rinaldi*, 904 F.3d at 265; *Nyhuis v. Reno*, 204 F.3d 65, 77-78 (3d Cir. 2000) ("[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial.").

Under the PLRA, prisoners who seek monetary damages under section 1983 must exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). However, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Accordingly, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford,* 548 U.S. at 90; *Byrd v. Shannon*, 715 F.3d 117, 127 (3d Cir. 2013) (concluding that prisoner failed to exhaust when he did not name defendant in his grievance as required by the prison grievance procedure). "Exhaustion merely requires inmates to provide enough information about the

conduct of which they complain to allow prison officials to take appropriate responsive measures." *Mack*, 839 F.3d at 296 (internal quotations and alteration omitted). Claims that are not properly exhausted under the PLRA are procedurally defaulted. *See Woodford*, 548 U.S. at 92-93; *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004). Exhaustion is considered separately for each claim brought by an inmate, and if a complaint includes both exhausted and unexhausted claims, courts will dismiss the latter but not the former." *Shifflett v. Korszniak*, 934 F.3d 356, 364 (3d Cir. 2019) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

The Pennsylvania Department of Corrections's general grievance process is set forth in policy number DC-ADM 804[4], which is available at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf (last viewed April 29, 2024). *See generally Moore v. Lamas*, No. 22-1007, 2023 WL 371397, at *2 (3d Cir. Jan. 24, 2023) ("DC-ADM 804 provides a general, though rigorous, mechanism for inmate grievances."). The United States Court of Appeals for the Third Circuit has stated that:

> ADM 804 creates the three-step Inmate Grievance System. First, an inmate must submit a grievance to the Facility Grievance Coordinator. The grievance must include the relevant facts, individuals involved, claims alleged, and relief sought. A different official—the Grievance Officer—reviews the grievance and submits an initial response. The inmate may appeal the initial response to the Facility Manager, who reviews it and issues a decision. The inmate may file a final appeal to the Secretary of Corrections' Office of Inmate Grievances and Appeals. . . . ADM 804 requires an inmate to specify in his grievance any alleged violation of department regulations or other law as well as specify the compensation or legal relief the inmate desires.

---

[4] The policies of the Pennsylvania Inmate Grievance System were amended in 2010. *See Byrd v. Shannon*, 715 F.3d 117, 127 n.5 (3d Cir. 2013)

*Prater v. Dep't of Corr.*, 76 F.4th 184, 203-04 (3d Cir. 2023). ADM 804 "is the exclusive means of exhaustion," so failure to "follow the full administrative review process under ADM 804" results in a failure to exhaust under the PLRA. *Id*. at 204.

With respect to exhaustion, Defendants argue that West's failure to comply with the requirements of the prison grievance system with regard to the grievances he filed about his medical care preclude him from asserting his claim in this Court based on the events at issue in those grievances. (*Id*.) Specifically, they assert that West did not mention Defendant Letizio in any grievance. In addition, they argue that West did not seek monetary damages in the one grievance that references Defendant Walsh.

Attached to the Motion are three grievances West filed about the claims asserted in his case.[5] In Grievance #1020348 ("Grievance '348") dated February 9, 2023, West states that on that date he went to medical triage because of continuing kidney pain and blood in his urine. (ECF No. 13-3 at 5.) At that appointment, West urinated in a cup and medical found blood in his urine. West claimed that medical personnel knew or should have known that he had a surgical stent in his kidney. He complained that the "Medical Department" showed deliberate indifference by failing "to timely schedule a follow up on [his] surgical implant," and requested $350,000 dollars in compensatory and punitive damages." (ECF No. 13-3 at 5.)

Grievance #1020347 ("Grievance '347"), which West filed on February 11, 2023, asserts that he asked correctional staff to call Medical because he was experiencing abdominal and

---

[5] The Court finds that the attached grievances are undisputedly authentic documents upon which West's claims are based and are properly considered in adjudicating the Commonwealth Defendants' Motion. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (stating a court may consider undisputedly authentic documents if the plaintiff's claims are based upon those documents).

kidney pain with blood in his urine but that Medical said not to send West as they were aware of problem and his medical needs. (ECF No. 13-4 at 5.) West claims that "Medical" failed to provide treatment for West's abdominal pain and blood in his urine, thereby exhibiting "deliberate indifference to [his] medical needs in violation of [his] 8th Amendment rights." (*See* ECF No. 13-4 at 5.) West again specifically requested $350,000 in damages. (*Id*.)

The '348 Grievance and the '347 Grievance were denied on initial review by the grievance officer because it was documented that West received medical attention for his kidney. West's appeal was denied in both instances by the Chief Grievance Officer, (ECF No. 13-3 at 1, ECF No. 13-4 at 1), after review by the Bureau of Health Care Services, the facilities manager, and on initial review. (ECF No. 13-3 at 2-4, ECF No. 13-4 at 2-7.) West's final appeals of the two grievances to the DOC's Chief Grievance Officer were denied on the ground that West received proper, reasonable, and appropriate medical care. (ECF No. 13-3 at 1, 9; ECF No. 13-4 at 1.)

Defendants argue that neither the '348 Grievance nor the '347 Grievance were properly exhausted because West failed to refer to Defendant Letizio or Defendant Walsh by name. (*See* ECF No. 13 at 13; ECF Nos.13-3, 13-4.) The failure to identify Defendant Walsh in these grievances violates ADM 804 and constitutes a failure to satisfy the exhaustion requirement. *See Byrd*, 715 F.3d at 127 (concluding that prisoner failed to exhaust when he did not name defendant in his grievance as required by the prison grievance procedure).

The outcome as to Defendant Letizio differs, however, based on his position as Medical Director. West asserted in the '348 Grievance filed on February 9, 2023 and the '347 Grievance filed on February 11, 2023 that he was entitled to money damages because the *Medical Department* or *Medical Unit* failed to provide timely medical care for his kidney. (ECF No. 13-3

9

at 5; ECF No. 13-4 at 5.)  At this stage of the litigation, because West named the Medical Department and described in sufficient detail the alleged delays in medical care related to the post-surgical treatment of his kidney problem, the Court finds that West has alleged sufficient facts that he substantially complied with administrative procedures and exhausted his claim with regard to Defendant Letizio.  *See Doe v. Pennsylvania Dep't of Corr.*, No. 20-00023, 2021 WL 1583556, at *21 (W.D. Pa. Feb. 19, 2021), *report and recommendation adopted*, No. 20-00023, 2021 WL 1115373 (W.D. Pa. Mar. 24, 2021) ("Doe sufficiently identified [the named defendant] in compliance with Section 11(d) of the DOC's grievance policy by providing a description of his position and naming the SCI-Cambridge Springs "medical department" and staff in the grievances."); *id.* at *19-21 (prisoners may substantially comply with administrative procedures when they bring grievances against particular prison departments rather than specific individuals within those departments).

West also submitted Grievance #1032377 ("Grievance '377") on May 1, 2023 asserting that Defendant Walsh provided inadequate medical care on April 19, 2023.  (ECF No. 13-5 at 5.)  West claimed that Defendant Walsh pressed down on his abdomen, causing him pain and discomfort.  (*Id.*)  West grieved that Defendant Walsh did not use prescribed treatment and continued the delay in treatment of his kidney infection.  (*Id.* at 5.)  The '377 Grievance was denied by the Chief Grievance Officer, (ECF No. 13-5 at 1), after review by the Bureau of Health Care Services, the facilities manager, and on initial review.  (ECF No. 13-5 at 2-4, 6, 8.)  West filed a final appeal that was denied on the ground that West received reasonable and appropriate medical care.  (ECF No. 13-5 at 1.)

The Court finds that West failed to allege plausibly that he exhaust Grievance '377.  Neither Defendant Letizio nor the Medical Department are identified in Grievance '377.  And

10

while the Grievance does identify Defendant Walsh, West did not include a request for money damages, an omission that renders the money damages claims asserted against Walsh in the Complaint to be unexhausted through Grievance '377. *See* DC-ADM 804(1)(A)(11)(d); *Endrikat v. Little*, No. 23-2167, 2023 WL 8519196, at *3 (3d Cir. Dec. 8, 2023) (failure to request damages in initial grievance warranted dismissal for failure to exhaust administrative remedies); *Walker v. Little*, No. 22-3451, 2023 WL 2570562, at *1 (3d Cir. Mar. 20, 2023) (affirming grant of motion to dismiss based on failure to exhaust claim for monetary damages).

Accordingly, the Court grants Defendants' motion to dismiss as to Defendant Walsh and denies the motion as to Defendant Letizio based on his role as Medical Director since West named the Medical Unit in Grievances '348 and '347 only and asked for money damages.[6]

### B. Deliberate Indifference

The Complaint raises an Eighth Amendment claim against Defendant Letizio based on the alleged delay in West receiving medical treatment for his kidney problem. The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 102, (1976). Deliberate indifference to a prisoner's serious medical needs constitutes an unnecessary and wanton infliction of pain. *Id.* at 104.

To state a constitutional claim in this context, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v.*

---

[6] West attached one other Grievance to his Response, Grievance # 1035350. (ECF No. 17 at 28-30.) This Grievance, dated May 19, 2023, is barely legible but appears to relate to West's alleged delay in receiving medical care. West does not allege plausibly that he exhausted this Grievance through the entire DC-ADM 804 procedure to a final review. (*Id.*; *see also* ECF No. 24 at 4 (in which West acknowledges that this Grievance was not exhausted.) This grievance therefore does not plausibly serve to exhaust any of the claims asserted in the Complaint.

11

*Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." ) (internal citations and quotations omitted). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill*, 372 F.3d at 235. Mere negligence in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment. *Estelle*, 429 U.S. at 105-06.

Letizio argues that the Complaint lacks factual averments that show deliberate indifference, and instead, evince at best negligence and "a disagreement with the care provided." (ECF No. 13 at 10.). He further contends that any delay West encountered in receiving follow up treatment from an outside urologist was due to an inability to obtain an appointment with an outside provider.[7] (*See* Mot. at 11-12.)

---

[7] At the motion to dismiss stage, the Court will not address facts outside the scope of the Complaint and those found in the grievances that relate to the grievance process itself. Whether an outside provider delayed medical follow up services is a question for another day, after the parties engage in discovery.

Taking the allegations in the Complaint as true and allowing West every reasonable inference that may be drawn from those allegations at this early stage of the litigation, the Court will deny the motion as to the deliberate indifference claim and allow it to proceed to discovery. West alleges that Letizio was aware of his emergent and continuing kidney issues yet delayed and/or denied treatment.  Specifically, West claims that Letizio knew of the recommendation for a two-week follow up but delayed further treatment for over 80 days.  He further claims that he failed to receive prescribed antibiotics.  In addition, West specifically contends that Defendant Letizio delayed making West an appointment with the prison urologist, Dr. Belkoff, even though Dr. Belkoff had time on his schedule to treat West.  These allegations are sufficient at this juncture to allow West's deliberate indifference claim to proceed against Defendant Medical Director Letizio.

Letizio frames the argument as a difference of medical opinion as opposed to a delay in providing any treatment.  (ECF No. 18 at 2-4). Citing *Pearson* 850 F.3d at 536 and *Johnson v. Cash*, 557 F. App'x 102, 103 (3d Cir. 2013), he argues that West's disagreement with the course of treatment being provided by prison medical staff fails to allege a plausible deliberate indifference claim.  However, the Court understands West to assert a claim for lack of treatment or delayed treatment as opposed to a mere difference of opinion over the form of treatment.  As such, Defendants' reliance on *Pearson* and *Johnson* is misplaced.  West claims that he did not receive prescribed medication and that Defendant Letizio did not consult with specialists regarding his kidney for an unreasonable period of time.  (ECF No. 2 at 12-13).  It is non-treatment and delayed treatment, not a choice of treatment, that West complains caused damage to his kidney.  (*Id*. at 13 (alleging a denial of proper medical treatment from January 9 through May 15, 2023).

At this early stage of the proceedings, the Court will allow West's deliberate indifference to medical needs claim based on the delay of medical treatment for his kidneys to proceed as to Defendant Letizio only based on the allegations contained in Grievances '348 and '347.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the Motion in part, and deny it in part. The Motion is granted as to Defendant Walsh and denied as to Defendant Letizio. An appropriate Order follows.

**BY THE COURT:**

**/s/ John Milton Younge**
_____
**JUDGE JOHN M. YOUNGE**