IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASON WEST** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | No. 23-3694 |
| | : | |
| **ANTHONY LETIZIO, D.O.** | : | |
| Defendant. | : | |

## MEMORANDUM

**Younge, J.**                                                                                         **July 8, 2026**

### I.        INTRODUCTION:

Currently before the Court is a Motion for Summary Judgment filed by Defendant

Anthony Letizio, D.O.  (Motion for Summary Judgment, ECF No. 62.)  The Court finds this

Motion appropriate for resolution without oral argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).  For the

reasons set forth in this Memorandum, Defendants' Motion for Summary Judgment is granted.

### II.       RELEVANT PROCEDURAL AND FACTUAL BACKGROUND:

#### A.        Relevant Procedural History:

The Court previously granted a motion to dismiss in favor of Defendant Joseph Walsh,

PA; however, it permitted this lawsuit to proceed against Dr. Letizio when it denied his motion

to dismiss.  (Order, ECF No. 28.)  Therefore, the only remaining claim for the Court to resolve is

a claim brought under 42 U.S.C. § 1983 against Dr. Letizio for deliberate indifference and cruel

and unusual punishment.  (*Id.*)  Now pending before this Court is a motion for summary

judgment filed by Dr. Letizio.  (Motion for Summary Judgement.)  For reasons set forth

hereinbelow, Dr. Letizio's motion for summary judgment will be granted.

**B.**     **Relevant Factual Background:**

Plaintiff Jason West, an inmate formerly housed at State Correctional Institution Phoenix (SCI-Phoenix), brings this action against Defendant Anthony Letizio, D.O., for personal injuries that Mr. West alleges occurred after he was implanted with a ureteral stent to treat a seven-millimeter obstructive kidney stone during a hospitalization at Einstein Medical Center Montgomery in January of 2023.  (Complaint page 5.)  Dr. Letizio is a physician who was the prison medical director at SCI-Phoenix during the relevant timeframe.  (Doctor Letizio's Statement of Facts ¶ 26, ECF No. 63.)  Mr. West alleges that Dr. Letizio acted with deliberate indifference in violation of the Eighth Amendment's prohibition on cruel and unusual punishment when Dr. Letizio failed to schedule him for a consult with a urological specialist within two weeks after placement of the ureteral stent at Einstein Medical Center Montgomery. (Complaint ¶ 6, page 13.)

Mr. West's primary factual theory is based on his belief that he should have been seen by a urology specialist for a follow-up examination within two weeks after his released from Einstein Medical Center Montgomery in January of 2023.  (*Id.* ¶¶ 3-4, page 12.)  Mr. West avers that Dr. Letizio failed to secure a follow-up appointment with a urology specialist within the appropriate timeframe after his return to SCI-Pheonix.  (*Id.*)  Mr. West claims that the delay in obtaining a consultation with a urological specialist caused needless pain and extended complications associated with his condition.  (*Id.* ¶ 7, page 13.)

The record shows that on January 4, 2023, Mr. West reported severe abdominal pain and nausea to SCI-Phoenix Physician Assistant Kaminsky.  (Medical Records, Summary Judgment Motion, Exhibit B, ECF No. 62-3 page 57.)  A KUB study (Kidney, Ureter, and Bladder study) was ordered and approved by Dr. Letizio, the results of which indicated no clear evidence of an

obstruction.  (*Id* at 56.)  Mr. West was then transferred to Einstein Medical Center Montgomery for further evaluations.  (*Id.* at 55.)  Physicians at Einstein Montgomery diagnosed Mr. West with an obstructing kidney stone and hydronephrosis.  (*Id.*)  On January 6, 2023, Mr. West underwent a cystoscopy procedure, and a double-J ureteral stent was placed.  (*Id.* page 54-55.)  The hospital discharge paperwork instructed that a urologist should be contacted within fourteen days to schedule follow-up care.  (*Id.* at 54).

Mr. West returned to SCI-Phoenix on January 9, 2023.  On that same day (and that day only), Dr. Letizio examined Mr. West personally, continued his medications including his antibiotics, approved a urology consultation, and discharged him from the prison infirmary.  (*Id.* page 51.)  Dr. Letizio claims that during this appointment, he told Mr. West that his follow-up visit with an offsite urologist had been "approved but not yet scheduled", and that for security reasons Mr. West would not be told the exact date of this appointment in advance.  (Dr. Letizio's Statement of Facts ¶ 7, ECF No. 63.)

While awaiting his appointment with the offsite urology specialist, Mr. West repeatedly complained of hematuria (blood present in urine), and pain in his kidney region.  (*Id.* ¶ 10.)  Mr. West avers that the prescribed antibiotics were unsuccessful in treating his kidney infection.  (Complaint ¶¶ 1, 3.)  Mr. West claims that his discharge instructions from Einstein Medical Center Montgomery required that he be seen by a urological specialist within two weeks of release from Einstein Montgomery.  (*Id.* ¶¶ 3-4.)  However, the directives in the discharge instructions are contested, and Dr. Letizio points out that an exam with a urology specialist was merely supposed to be scheduled within two weeks of discharge from Einstein Montgomery.  (Motion for Summary Judgment.)

On March 29, 2023, Mr. West was examined and treated by Dr. Laurence Belkoff, a urologist who visited SCI-Phoenix to treat incarcerated patients. (Complaint ¶ 6; Medical Records, Summary Judgment Motion, Exhibit B, ECF No. 62-3 page 165.) During the relevant timeframe, prior to his visit with Dr. Belkoff on March 29, 2023, the record indicates that Mr. West was seen by prison medical providers (including CRNP Senkowski and PA Joseph Walsh), underwent multiple urinalysis, a culture sensitivity test, and kidney ultrasound, and declined the need for any pain medication. (*Id.*)

In support of his motion for summary judgment, Dr. Letizio argues that the evidence shows that Mr. West received ongoing, appropriate medical attention at SCI-Pheonix throughout the relevant timeframe. (Dr. Letizio's Statement of Facts ¶¶ 1, 9, 14, 19, 46, 48.) Dr. Letizio points to the frequency of West's medical encounters following his hospitalization and to the diagnostic testing that was performed by other medical providers, including urinalyses and a kidney ultrasound. (Brief in Support of Summary Judgment page 12, ECF No. 62.) According to Dr. Letizio and based on the medical records, those studies did not reveal any signs of infection, and Mr. West was prescribed antibiotics and offered pain control while the urology visit was pending. (*Id* at 16.) Dr. Letizio also maintains that he interacted with Mr. West only one time on January 9, 2023. (*Id.*) Dr. Letizio states that during that encounter he authorized the urology follow-up with an offsite urologist, and he continued post-hospitalization medications. (*Id.*)

Dr. Letizio argues that he did not control the scheduling of offsite medical appointments with specialists which were arranged by a separate administrative department at SCI-Phoenix. (*Id*. at 10.) Dr. Letizio further argues that the timing of offsite medical appointments was dependent on the availability of the individual medical specialists and the ability of staff at SCI-

Pheonix to secure safe transportation for inmates. (Brief in Support of Summary Judgment page 12.) Dr. Letizio claims that rather than deliberate indifference, practical concerns related to prison administration and safety created barriers to his ability to arrange an offsite visit with a urologist. Dr. Letizio asserts that he initially attempted to secure an appointment with Dr. Rosenthal at Mid Atlantic Urology – the urologist who performed the original stent placement procedure at Einstein Medical Center Montgomery. (Dr. Letizio's Statement of Material Facts ¶¶ 38-42; ECF No. 63.) However, the scheduler at SCI-Pheonix was unable to obtain an appointment with Dr. Rosenthal. (*Id.*)

Mr. West was subsequently scheduled to see Dr. Belkoff for the earliest available slot, which was March 29, 2023. (Verification Dr. Letizio ¶¶ 18-21, ECF No. 62-4.) Interestingly enough, Dr. Belkoff did not remove Mr. West's stent during the initial visit on March 29, 2023; rather, Dr. Belkoff decided to reevaluate Mr. West's condition and set a follow-up appointment which eventually took place on May 15, 2023. (Brief in Support of Summary Judgment page 13-14.) At the follow-up consultation on May 15, 2023, Dr. Belkoff decided to remove the original stent that was implanted in Mr. West and replace it with a new stent because Mr. West's kidney stone had not passed. (*Id.* at 8.) On May 24, 2023, PA Walsh removed the second stent, and West's recorded treatments end there. (Verification of Dr. Letizio ¶ 29.)

Dr. Letizio denies any constitutional violation and contends that the uncontested record shows that he was not deliberately indifferent to Mr. West's known serious medical needs. (*Id.*) He notes that nothing in the medical records supports Mr. West's interpretation of the substandard medical care that Mr. West claims he was provided. Dr. Letizio asserts that in his professional medical opinion, "everything was done appropriately to diagnose and treat all of Mr. West's medical complaints" (*Id.* ¶ 33), nothing noted in Mr. West's medical records required

emergency stent removal, and that the symptoms Mr. West reported were consistent with a kidney stone and his ureteral stent.  (Verification Dr. Letizio.)  Mr. West disagrees with Dr. Letizio's interpretation of his release instructions from Einstein Montgomery, and he argues that the delay in scheduling an appointment with a urology specialist establishes deliberate indifference to his serious medical needs.  (Complaint.)

## III.    LEGAL STANDARD:

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine.  See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore,* 549 F.3d 225, 229 (3d Cir. 2008).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Anderson,* 477 U.S. at 248.  A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party."  (*Id*).

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact.  *Goldenstein v. Repossessors Inc.,* 815 F.3d 142, 146 (3d Cir. 2016).  When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of h[is] case."  *Burton v. Teleflex Inc*., 707 F.3d 417, 425 (3d Cir. 2013).  If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial."  *Santini v. Fuentes,* 795 F.3d 410, 416 (3d Cir. 2015) (internal

6

quotations omitted) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See *Anderson,* 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.,* 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. See *Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.,* 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV.    DISCUSSION:

Mr. West brings this lawsuit under 42 U.S.C. § 1983 based on the legal theory that Dr. Letizio violated Mr. West's right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment of the United States Constitution. Specifically, Mr. West alleges that Dr. Letizio failed to provide adequate medical care and treatment for Mr. West's kidney stones. To be able to make a valid claim under Section 1983 for constitutionally inadequate medical care, a plaintiff must prove that he had a serious medical need and that acts or omissions by prison officials took place that indicate their deliberate indifference to that need, creating cruel or unusual punishment.[1] *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).

---

[1] For the current pending motion, the Court will accept Mr. West's contention that his kidney stone met the definition of a serious medical condition for constitutional purposes, so the remaining question for the Court to resolve is whether a reasonable jury could conclude that Dr. Letizio acted with deliberate indifference.

In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id*. at 106. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer Brennan*, 511 U.S. 825, 835; *Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

In the context of claims based on a theory of deliberate indifference for an alleged failure to provide adequate medical care, the Third Circuit Court of Appeals has repeatedly held that negligence or medical malpractice without a more culpable state of mind never constitutes deliberate indifference. See *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2024); *Singletary v. Pa. Dept. of Corrections*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (a prisoner's claim of negligent diagnosis or treatment does not rise to the level of deliberate indifference); *Bednar v. County of Schuylkill,* 29 F.Supp. 2d 250, 253 (E.D. Pa. 1998)

8

(a doctor's decision not to order specific forms of diagnostic treatment, an x-ray for example, constitutes medical judgment which never supports a cause of action based on deliberate indifference to a serious medical need). Courts have uniformly held, when considering a difference of opinion as to treatment, that this type of conduct constitutes, at best, negligence but not the deliberate indifference required by Section 1983. *Snipes v. De Tella*, 95 F.3d 586, 591 (7th Cir. 1996) (disagreement in treatment alone will not support a constitutional violation); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (a difference of opinion between an inmate and a physician or between physicians does not give rise to an Eighth Amendment violation). Negligence fails to rise to the level of deliberate indifference necessary to support an Eighth Amendment action under Section 1983. *Id.*

There are several principles recognized by the Third Circuit Court of Appeals which are relevant to determining whether expert testimony is required to establish deliberate indifference within the context of providing medical care to prison inmates. *Pearson v. Prison Health Services,* 850 F.3d 526, 535 (3d Cir. 2017). First, deliberate indifference concerns a defendant's state of mind, which may be established through circumstantial evidence or witness testimony. (*Id.*) Second, courts distinguish between cases involving a complete denial of medical treatment and those involving allegedly inadequate treatment. (*Id.*) Where medical care is provided, courts generally presume the treatment was professionally appropriate absent evidence that demonstrates that treatment was conducted that was outside the accepted medical standards. (*Id.*) Third, even inadequate medical care does not itself establish deliberate indifference, and the plaintiff must show that the defendant provided such care while consciously disregarding a substantial risk of serious harm. (*Id.*)

9

A.    **Dr. Letizio Did Not Act with Deliberate Indifference to Mr. West Serious Medical Needs:**

Based on the record before the Court, no reasonable jury could find that Dr. Letizio acted with deliberate indifference towards Mr. West's medical needs.  Here, Mr. West has failed to present evidence from which a reasonable jury could find deliberate indifference under the Eighth Amendment.  The record contains no circumstantial evidence that Dr. Letizio had subjective awareness of a substantial risk of serious harm being caused by the treatment provided.  Additionally, Mr. West has failed to establish a causal connection between Dr. Letizio's alleged conduct and his injuries.

The record demonstrates that Dr. Letizio provided medical care and follow-up treatment to Mr. West.  Upon returning to SCI-Phoenix after Mr. West's stent placement procedure, Mr. West met with Dr. Letizio on one single occasion on January 9, 2023.  During this single appointment, Dr. Letizio continued Mr. West's prescribed medications, approved the recommended follow-up appointment with a urology specialist in accordance with hospital release paperwork, and discharged Mr. West from the prison infirmary.  There is nothing in the record to indicate that Dr. Letizio ignored Mr. West's complaints, refused to provide treatment, or intentionally interfered with his recommended care.

A review of Mr. West's medical records illustrates that SCI-Phoenix medical staff continued to monitor Mr. West via multiple evaluations.  Mr. West sole contention in this lawsuit is that he should have been seen by a urology specialist prior to the March 29, 2023, follow-up visit with Dr. Belkoff.  However, the record establishes Mr. West received medical care inside of SCI-Phoenix after he returned from Einstein Medical Center Montgomery where he underwent the stent placement procedure on January 6, 2023.  Even when viewed in a light most favorable

10

to Mr. West, there is no indication in the record that Mr. West received inadequate medical attention, nor was he denied care at any point during the relevant timeframe.

The fact that Mr. West received medical treatment at SCI-Phoenix is crucial to Mr. West's claim of deliberate indifference because courts distinguish between claims involving the denial of medical care and disagreements concerning the quality, speed, or choice of care. *See Spruill*, 372 F.3d at 235 (holding that "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation); *Monmouth Cnty. Corr. Institutional Inmates*, 834 F.2d at 346. Moreover, courts will not second guess whether a particular course of treatment is adequate or proper. *Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment.")); *Estelle*, 429 U.S. at 105-06 (Medical professionals may exercise discretion in treatment and allegations of negligent treatment or medical malpractice do not trigger constitutional protections). The Eighth Amendment does not entitle inmates to the treatment of their choice, nor does it authorize courts to second-guess healthcare providers' medical judgments. *Id.*

The focus of Mr. West's Complaint is that he should have been seen by a urologist prior to March 29, 2023. However, without evidence that Dr. Letizio treated Mr. West with subjective disregard, Mr. West's scheduling disagreement cannot demonstrate deliberate indifference. Such allegations do not rise to the level of an Eighth Amendment violation when Dr. Letizio claims that the care he provided was adequate and appropriate. Furthermore, Mr. West fails to come forward with medical expert testimony or opinion to establish that the care he received was

11

deficient or inadequate.  Accordingly, because the undisputed record reflects efforts to secure specialist care, ongoing treatment, and a timeline of medical monitoring and medication management, no reasonable jury could conclude that Dr. Letizio consciously disregarded West's serious medical needs.

**B.      Mr. West Fails to Come Forward with Evidence to Establish that Dr. Letizio was Personally Involved in Any Alleged Delay in Treatment:**

The fact that liability under 42 U.S.C. § 1983 cannot be premised upon vicarious liability based on a theory of respondeat superior is critical to the claims of deliberate indifference asserted by Mr. West.  See *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989); see also *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).  A plaintiff must establish that each defendant had personal involvement in the alleged constitutional violation to proceed under Section 1983.  *Id.* Personal involvement may be shown through direct participation, personal direction, or actual knowledge and acquiescence in the challenged conduct.  *Id.*

Mr. West's claim centers upon the delay between his January 2023 hospitalization and his March 29, 2023, appointment with urologist Dr. Belkoff; however, the record does not establish that Dr. Letizio personally caused the alleged delay.  The undisputed evidence establishes instead that Dr. Letizio approved the requested follow-up visit with Dr. Rosenthal, an offsite urologist, during the appointment with Mr. West on January 9, 2023.  Once approved, Dr. Letizio alleges that he had no control over scheduling appointments with outside medical specialists, which was instead handled by institutional scheduling personnel.  Mr. West comes forward with nothing to contradict Dr. Letizio's contention that he had no control over scheduling.  Mr. West produced no evidence to suggest that Dr. Letizio cancelled, denied, postponed, or otherwise interfered with the requested consultation.  Nor has Mr. West identified

12

any evidence demonstrating that Dr. Letizio possessed authority over the scheduling process and intentionally failed to exercise it.

Mr. West failed to come forward with evidence to establish that Dr. Letizio personally caused or contributed to the timing of the March 29, 2023 appointment.  Without evidence linking the delay to Dr. Letizio's own conduct, no reasonable jury could find him personally responsible for any constitutional deprivation under Section 1983.  Mr. West cannot establish liability based solely upon what he purports to have been a delay in being seen by a urology specialist outside of the confines of SCI-Pheonix.

## V.    CONCLUSION:

The uncontested record here contains no evidence of Dr. Letizio's deliberate indifference towards Mr. West's serious medical needs; therefore, Dr. Letizio is entitled to summary judgment as a matter of law.  After Mr. West was release from Einstein Medical Center Montgomery and returned to SCI-Phoenix, Dr. Letizio examined and treated Mr. West, approved his medication and approved follow-up care with urology.  During the relevant timeframe, SCI-Phoenix medical staff provided ongoing care, administered tests, managed medications, and conducted evaluations.  Mr. West comes forward with no evidence to establish that Dr. Letizio knowingly disregarded his serious medical needs or that Dr. Letizio was personally involved in any purported delay in scheduling follow-up care with urology.

For the reasons stated above, Dr. Letizio's Motion for Summary Judgment is granted.  An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

    /s/ John Milton Younge
Judge John Milton Younge

13